IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CARLOS HALL, SR.                                                                                    PLAINTIFF

CASE NO. 4:21CV00106 BSM

ERIC S. HIGGINS                                                                                       DEFENDANT

**BRIEF IN SUPPORT OF RESPONSE TO**
**MOTION FOR SUMMARY JUDGMENT**

COMES the Plaintiff, CARLOS HALL, SR., by and through Counsel, SUTTER & GILLHAM, P.L.L.C.; and, for this Brief in Support of his Response to Defendant's Motion for Summary Judgment, he states:

### INTRODUCTION

Plaintiff is an American Citizen who is in a wheelchair for the rest of his life. Unfortunately, he was incarcerated in the Pulaski County Jail around April 2019. When there, he was unable to shower, use the bathroom, or get up from bed without paying other inmates to help him. Plaintiff brings this action pursuant to 41 U.S.C. § 1983 for violation of his Eighth and Fourteenth Amendment rights as well as in violation of the Americans with Disabilities Act of 1990.

### FACTUAL SUMMARY

Plaintiff is a disabled resident and citizen of Pulaski County, Arkansas, who is confined to a wheelchair. Tilley, p 12:12-15. Plaintiff is an individual with a disability as defined by the Arkansas Civil Rights Act of 1993 and Title II of the Americans with Disabilities Act, 42 U.S. Code § 12131 *et seq*. Plaintiff requires use of a wheelchair for mobility and will continue to do so for the rest of his life. Consequently, Plaintiff is substantially limited in his ability to walk, lift himself, control his bowel and bladder, and care for himself. Tilley, p 12:12-15.

In 2019, Plaintiff was incarcerated in the Pulaski County Regional Detention Facility, which has an affirmative duty to provide healthcare to the inmates. Hall Vol. 1, p 104:13-17. Despite clear notice of his disability, Defendant, Eric S. Higgins, failed to provide Plaintiff appropriate accommodations and accessible toilets. This caused Plaintiff to soil himself and lie in his own waste for hours on end. There were indeed times that other inmates had to help clean the Plaintiff. Hall Vol. 1, p 32:3-10; 32:23-33:6; 33:13-17; Vol 2. p 8:3-8:1; 15:13-21; 38:1-17; 38:10-39; 39:20-25; 40:1-14; 41:12-42:6; 72:2-93:15. While incarcerated at the Pulaski County Jail, Plaintiff developed pressure sores because Defendant failed to provide him with appropriate staff to turn him and to conduct daily checks of his skin integrity. Plaintiff also fell because he was housed in an inaccessible cell and while in the shower. Hall Vol. 1, p 32:3-10; 32:23-33:6; 33:13-17; Vol 2. p 8:3-8:1; 15:13-21; 38:1-17; 38:10-39; 39:20-25; 40:1-14; 41:12-42:6; 72:2-93:15.

## I. 8TH AMENDMENT & 14TH AMENDMENT

The pressure sores were completely avoidable. As such, Plaintiff developed painful, foul-smelling, pressure sores and continues to experience excruciating pain to this day. Plaintiff repeatedly complained, but Defendant paid him no mind and outright ignored his pleas for help. Vol 2, p 41:25-42:15; 49:20-50:8. Plaintiff is incontinent for bladder and uses suprapublic catheterization for excretion of urine. Vol 2, p 44:3-19. Defendant required Plaintiff to use a "one size fits all" manual wheelchair with no cushion, which prevented Plaintiff from ambulating independently, and contributed to the development and worsening of his pressure sores. Vol 2, 37:7-11.

Ms. Moore did not do a skin audit on intake Moore Deposition attached as **Exhibit "B."** at p. 5:9-14 at p. 16:6-7. There is no difference between the standard of care for prisons and free society Tilley Deposition attached as **Exhibit "C."** at p. 5:5-9. Prison does not affect standard of

care only delivery of care Tilley Deposition attached as **Exhibit "C."** at p. 5:18-23. Despite this, Hall was told by the medical staff that this was not a nursing home. Hall Deposition attached as **Exhibit "D."** at vol 1 p. 33:13-17. Dr. Tilley saw Mr. Hall in May 2019 for indigestion and bp. Tilley Deposition attached as **Exhibit "C."** at p. 6:11-20. Nursing staff should perform skin audit on intake Tilley Deposition attached as **Exhibit "C."** at p. 7:10-17.  People in wheelchairs are at risk of pressure sores Tilley Deposition attached as **Exhibit "C."** at p. 8:6-8.  Persons in wheelchairs must be provided nutrition and movement to prevent pressure sores Tilley Deposition attached as **Exhibit "C."** at p. 13:4-10. Housing is distinct from medical while some input not universally done Tilley Deposition attached as **Exhibit "C."** at p. 15:3-16. Patient understands abilities more than Dr. Tilley Deposition attached as **Exhibit "C."** at p. 18:6-15. Open sores cause a risk of infection and can be life threatening Tilley Deposition attached as **Exhibit "C."** at p. 23:8-13. If Hall complained about bed sores, then a skin audit should have been performed Tilley Deposition attached as **Exhibit "C."** at p. 27:5-8.

## II. ADA

ADA policies are under review Higgins Deposition Attached **as Exhibit "A."** at p. 4:25-5:6. Ultimately it is the jail administrations call on the accessibility of the cell Higgins Deposition Attached as **Exhibit "A."** at p 5:20-6:10. It is dangerous for anyone moving from a chair to another chair or toilet Higgins Deposition Attached as **Exhibit "A."** at p.6:23-7:3. It is Higgins' responsibility to ensure that inmates are treated in a constitutional manner Higgins Deposition Attached as **Exhibit "A."** at p. 8:2-5.  The jail has accessible cells Higgins Deposition Attached as **Exhibit "A."** at p. 10_304.  Sheriff Higgins does not know whether any specific mats are given to disabled inmates Higgins Deposition Attached as **Exhibit "A."** at p. 11:1-10.

Ms. Moore worked at jail from 2014 to 2019 Moore Deposition attached as **Exhibit "B."** at p. 5:9-14. Ms. Moore did not provide direct care Moore Deposition attached as **Exhibit "B."** at p. 5:9-14 p. 5:20-24. Ms. Moore testified it was up to the county on whether the inmate kept the wheelchair they came into the jail with Moore Deposition attached as **Exhibit "B."** at p. 5:9-14 at p. 6:20-7:5. Ms. Moore never received training from Tilley. Moore Deposition attached as **Exhibit "B."** at p. 5:9-14 at p. 8:2-4. Ms. Moore testified there was no grab bars are in cells to help disabled transfer to toilet Moore Deposition attached as **Exhibit "B."** at p. 5:9-14p. 9:4-7 & 10:7-10. Persons in wheelchairs were recommended to be put in lower bunk Moore Deposition attached as **Exhibit "B."** at p. 5:9-14 10:19-11:18. Ms. Moore identified health issues that the jail and nurses needed to know about Moore Deposition attached as **Exhibit "B."** at p. 5:9-14 at p. 11:19-25. Ms. Moore was not trained on accessible cell and does not know when one is required Moore Deposition attached as **Exhibit "B."** at p. 5:9-14 at p. 12:9-13:1.

Neurontin can cause a loss of balance and increase the fall risk Tilley Deposition attached as **Exhibit "C."** at p. 25:13-18. Laying in filth could be life threatening for someone in a wheelchair. Tilley Deposition attached as **Exhibit "C."** at p. 36:20-23. The nursing staff ignored Hall. Only saw him a couple of times. Hall Deposition attached as **Exhibit "D."** at Vol 1 P. 31:3-8. Hall was told that he could not be properly taken care of by someone at Pulaski County Jail because they could not change him Hall Deposition attached as **Exhibit "D."** at vol 1 p. 32:3-10. Deputies told him that it was up to the nursing staff to change him and to turn him, transfer from wheelchair to toilet, shower chair. Had to pay inmates to help because staff did not help. Hall Deposition attached as **Exhibit "D."** at vol 1 P. 32:23-33:6 & vol 2 p. 7:3-8:1. Hall wears diapers for bowel incontinence but if felt urge would get somebody to help onto the toilet. **Exhibit "D."** at vol. 2 15:13-21.

Hall is unable to transfer himself in bed. Hall Deposition attached as **Exhibit "D."** at vol. 2 15:22-24. Hall fell while trying to transfer from chair to bed – this was the only time that nurses changed him – he was full of feces. Hall Deposition attached as **Exhibit "D."** at vol. 2 p. 38:1-17. The cell that Hall was in did not have a rail – it had a mattress and toilet, but he could not transfer himself Hall Deposition attached as **Exhibit "D."** at vol. 2 p. 38:18-39:8. Hall could not use the showers outside the cell because the wheelchair could not roll into the shower area because there was a lip in the floor Hall Deposition attached as **Exhibit "D."** at p. 39:9-19.

While he was given another shower chair, he still needed assistance from another person. The guards would not help him. He had to pay other inmates to help him. Hall Deposition attached as **Exhibit "D."** at Vol 2 p. 72:2-73:15. Medical staff did not tell Hall to notify them when they needed assistance. Hall Deposition attached as **Exhibit "D."** at Vol 2 p. 76:5-19. Hall was only changed once when he was found on the floor in the U unit. He was told by the staff that it was not their job to change him. Hall Deposition attached as **Exhibit "D."** at Vol 2 p. 84:4-18. Hall needs help moving himself because he is unable to lift his body due to the injuries to his spinal cord. Hall Deposition attached as **Exhibit "D."** at Vol 2 p. 106:15-107:2. Hall used a silicone catheter which cause him to break out in a rash because he is allergic to it and it leaked which caused him to smell like urine. Hall Deposition attached as **Exhibit "D."** at Vol 2 p . 107:14-25.

Hall never took shower while in U unit because the shower was not handicap accessible. Hall Deposition attached as **Exhibit "D."** at vol 2 p. 39:20-25. Hall could not change his own diaper, the nurses only changed him once, he wore the same diaper for three days and was unable to use the toilet in U unit. Hall Deposition attached as **Exhibit "D."** at vol. 2 p. 40:1-14. None of the toilets nor showers were accessible in the W unit either Hall Deposition attached as **Exhibit "D."** at vol 2 p. 41:12-15. Other inmates helped Hall shower, but he still fell in the shower Hall

Deposition attached as **Exhibit "D."** at vol 2 p. 41:25-42:15. Hall requested to be placed in L unit, but the guards told him that it was full, so he requested W unit instead Hall Deposition attached as **Exhibit "D."** at vol 2 p. 49:20-50:8.

### III. HALL NEVER REFUSED MEDICAL

Hall refused to sign the paper on April 20, 2019 because the doctors were ignoring his medical needs. Hall Deposition attached as **Exhibit "D."** at Vol 2. P. 55:10-56:13. Hall never refused a sick call. Hall Deposition attached as **Exhibit "D."** at vol 2 p. 57:7-24. Hall refused MiraLAX because he did not want to have to use the bathroom even more because he could not clean himself Hall Deposition attached as **Exhibit "D."** at vol. 2 p. 60:9-24. Hall could not get off his bunk because he needed help Hall Deposition attached as **Exhibit "D."** at vol 2 p. 63:5-22. The guards and nurses would not help get Hall out of bed would run out of money so he would be left in bed without meds, food, etc. Hall Deposition attached as **Exhibit "D."** at vol 2. P. 64:17-65:9. Medical is lying that he refused. Medical is highly sought after in jail. No inmate would refuse medical. This is meant to coverup the abuse that Hall suffered. Hall Deposition attached as **Exhibit "D."** at Vol 2. P. 66:2-20. One guard took the extra mattress from Hall because the guard believed that Hall did not need it. Then Hall got the mattress back a couple of days later. Hall Deposition attached as **Exhibit "D."** at Vol 2 p. 70:19-71:18.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th

Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. Id. All reasonable inferences must be drawn in a light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). To prevail on an Eighth Amendment claim for deprivation of medical care, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir.1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it. Id.; see also *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir.1995). A medical need that would be obvious to a layperson makes verifying medical evidence unnecessary. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir.2004).

Deliberate indifference is equivalent to criminal-law recklessness, which is "more blameworthy than negligence," yet less blameworthy than purposefully causing or knowingly

bringing about a substantial risk of serious harm to the inmate. See *Farmer*, 511 U.S. at 835, 839–40, 114 S.Ct. 1970. An obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate. *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir.2007). Deliberate indifference must be measured by the official's knowledge at the time in question, not by "hindsight's perfect vision." Id. at 993 n. 1 (quoting *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir.1998)). Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact. *Coleman*, 114 F.3d at 785.

### I. CONDITIONS OF CONFINEMENT

Courts have been cautious about condoning conditions of confinement that include an inmate's proximity to human waste. *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in Farmer and the more general standards of dignity embodied in the Eighth Amendment."); *Brooks v. Warden*, 800 F.3d 1295, 1305 (11th Cir. 2015) (reversing dismissal of Eighth Amendment claim where prisoner was forced to defecate into his jumpsuit and sit in his own feces for two days and stating: "the health risks of prolonged exposure to human excrement are obvious.").

While there is "no doubt that toilets can be unavailable for some period of time without violating the Eighth Amendment," *Johnson v. Lewis*, 217 F.3d at 733, exposure to human waste carries particular weight in the conditions calculus. See *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir.2001) (finding "sufficiently serious conditions of confinement" where inmate in feces-covered cell for three days); see also *Johnson v. Lewis*, 217 F.3d at 733; *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir.1990) ( "courts have been especially cautious about condoning conditions that

include an inmate's proximity to human waste"); *Michaud v. Sheriff of Essex County*, 390 Mass. 523, 458 N.E.2d 702, 705–06 (1983) (listing cases showing "an intolerance for confinement which requires persons to live in close proximity to their own human waste and that of others"). Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in Farmer and the more general standards of dignity embodied in the Eighth Amendment. See *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir.1991) ( "unquestionably a health hazard" to live in "filthy water contaminated with human waste"); *Fruit*, 905 F.2d at 1150–51 ("common sense" that *975 "unprotected contact with human waste could cause disease"); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir.1989) (three days in cell with feces smeared on walls not within "civilized standards, humanity, and decency"); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2nd Cir.1972) ("Causing a man to live, eat, and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted.").

As stated by the Supreme Court in *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), the eighth amendment prohibits punishments that "deprive inmates of the minimal civilized measure of life's necessities." This includes the infliction of punishment "totally without penological justification." *Martin v. White*, 742 F.2d 469, 474 (8th Cir.1984). Any analysis of confinement conditions must be based on the totality of the circumstances. See *Johnson v. Levine*, 588 F.2d 1378, 1389 (4th Cir.1978) (per curiam); *Williams v. Edwards*, 547 F.2d 1206, 1211 (5th Cir.1977). The Eight Circuit has held that inmates are entitled "to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).

Here, Hall was forced to go days sitting in his own feces, smelling like urine, without any shower. To make matters worse, he had to pay other inmates to help him take care of his self needs

such as wiping himself. The Eighth Amendment is concerned with human dignity, and there is no dignity in forcing a man to sit in his feces, smelling like urine, without the ability to clean himself. Further, Defendants have admitted that they placed him in cells that were inaccessible. **See DE SUF at Para 55.** Summary judgment should be denied.

### II.   SERIOUS HEALTH NEED

In 2019, Plaintiff was incarcerated in the Pulaski County Regional Detention Facility, which has an affirmative duty to provide healthcare to the inmates. Despite clear notice of his disability, Defendant, Eric S. Higgins, failed to provide Plaintiff appropriate accommodations and accessible toilets. This caused Plaintiff to soil himself and lie in his own waste for hours on end. There were indeed times that other inmates had to help clean the Plaintiff. While incarcerated at the Pulaski County Jail, Plaintiff developed pressure sores because Defendant failed to provide him with appropriate staff to turn him and to conduct daily checks of his skin integrity. Plaintiff also fell because he was housed in an inaccessible cell and while in the shower.

The pressure sores were completely avoidable. As such, Plaintiff developed painful, foul-smelling, pressure sores and continues to experience excruciating pain to this day. Plaintiff repeatedly complained, but Defendant ignored his pleas for help. Plaintiff is incontinent for bladder and uses suprapublic catheterization to urinate. Defendant required Plaintiff to use a "one size fits all" manual wheelchair with no cushion, which prevented Plaintiff from ambulating independently, and contributed to the development and worsening of his pressure sores. Defendant's own doctor testified that it is a serious health condition to force a person in a wheelchair to sit in their own excrement. This increases the risk of infection among other things.

### III.   DEFENDANT IGNORED PLAINTIFF

At best, Defendant knew that Plaintiff was in a wheelchair, incontinent, and needed a change of his diaper. This combination of facts warrants a denial of summary judgment. There is a material fact dispute as to whether Defendant did anything. Defendant claims that they attempted to see Plaintiff but that he refused medical on numerous occasions. Plaintiff says this is false. Hall Deposition attached as **Exhibit "D."** at vol 2 p. 57:7-24. Cutting against the Defendant's position, they contend that they went to Plaintiff's cell but he refused to leave his cell. Well, without help, Plaintiff could never leave his cell if he was in bed because he could not transfer by himself from the bed to his wheelchair. Hall Deposition attached as **Exhibit "D."** at vol. 2 15:22-24. Additionally, it is unclear who was supposed to help Hall with his daily needs. The nurses say that it was the guards, and the guards say that it is the nurses. This lack of policy leads to constitutional violations like here. Summary judgment should be denied.

## SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S ADA CLAIMS

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also 29 U.S.C. § 794(a) (parallel statutory language in Rehabilitation Act). One of the many regulations implementing the statutory mandate provides: "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in" government programs. 42 U.S.C. § 12132. Because Title II protects any disabled individual who can meet the "essential eligibility requirements" of those programs with the help of "reasonable

modifications to rules, policies, or practices," the ADA requires the government to provide such modifications. See id. § 12131(2).

The Supreme Court has found that "[s]tate prisons fall squarely within the [statute's] definition of public entity." Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1952) (internal quotations and citations omitted). In *Yeskey,* the Supreme Court expressly noted that the phrase "services, programs, or activities of a public entity" in 42 U.S.C. § 12132 encompasses medical services offered in prisons. 524 U.S. at 210. In a more recent decision on the constitutionality of Title II's abrogation of state sovereign immunity, the Supreme Court stated, in dictum, that "it is quite plausible that the alleged *deliberate refusal* of prison officials to accommodate ... disability-related needs in such fundamentals as ... medical care" constitutes exclusion from or denial of the benefits of the prison's "services, programs, or activities" for purposes of Title II of the ADA. *See United States v. Georgia,* 546 U.S. 151, 157–59, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006) citing *Yeskey,* 524 U.S. at 210) (emphasis added).

Since *Georgia,* the First Circuit has recognized a Title II challenge to medical care in a prison setting. *See Kiman v. New Hampshire Dep't of Corr.,* 451 F.3d 274 (1st Cir.2006). Relying on *Georgia,* the court acknowledged that "[m]edical care is one of the 'services, programs, or activities' covered by the ADA" but also noted that courts have "differentiated ADA claims based on negligent medical care from those based on discriminatory medical care." *Id.* at 284. Where the challenged care is "simply a reasoned medical judgment with which the patient disagreed," state medical malpractice law rather than the ADA is the appropriate vehicle in which to bring a claim. *Id.* at 285. However, where the challenged practice constitutes "outright denial of medical services," an ADA claim may lie. *Id.* at 287. Under those principles, the plaintiff's challenge to the prison's diagnosis and treatment of his amyotrophic lateral sclerosis was not cognizable under Title

II of the ADA. *Id.* at 284–85. However, his challenge to corrections officers' denial of access to his prescription medications was cognizable. *Id.* at 286–87.

Where a plaintiff's factual allegations paint a picture of mere negligence in the provision of medical services, a Title II ADA claim cannot lie, but where they indicate an outright and deliberate denial or refusal of access to medical care for a qualifying disability, a plaintiff may proceed under Title II. Payne v. Arizona, No. CV-09-1195-PHX-NVW, 2010 WL 1728929, at *5 (D. Ariz. Apr. 26, 2010).

Defendant admits that it placed Plaintiff in an inaccessible cell for 14 days and on "administrative segregation because he was in a wheelchair." **See DE 29 p. 29 & Defendant's SUDF No. 55.** Thus, it is Plaintiff that is entitled to summary judgment on liability- not the Defendant. Plaintiff is a disabled resident and citizen of Pulaski County, Arkansas, who is confined to a wheelchair. Therefore, he is an individual with a disability as defined by the Arkansas Civil Rights Act of 1993 and Title II of the Americans with Disabilities Act, 42 U.S. Code § 12131 *et seq.* Plaintiff requires use of a wheelchair for mobility and will continue to do so for the rest of his life. Consequently, Plaintiff is substantially limited in his ability to walk, lift himself, control his bowel and bladder, and care for himself. "The jail is required to provide disabled inmates with meaningful access to facilities such as bathrooms." *Coon v. Gober*, 4:18-CV-00144 BSM, 2019 WL 5295582, at *3 (E.D. Ark. Oct. 18, 2019). As this Court did in *Coon*, it should deny summary judgment. By Defendants own admission, they did not do so for at least 14 days. That is a violation of the ADA. So, Summary judgment should be denied. In this case, Plaintiff seeks money damages, injunctive relief, fees, and costs.

Here, Plaintiff was in a wheelchair, and he was placed in a cell where he was unable to transfer himself from his bed to his wheelchair, so he was forced to either lay in his own feces or

pay inmates to assist because the jail refused. Thus, the most obvious accommodation was to place Plaintiff in a cell with grab bars. This was not done. Why? Because even 24 years too late, there has been no transition plan completed. Thus, Plaintiff is entitled to Declaratory Relief and Injunctive relief, requiring the Sheriff to create a transition plan and allow persons with disabilities who have mobility impairments reasonable accommodation of either allowing inmates a mobility aid or placing them in an accessible cell.

Since there is no evidence of ADA coordinator, there are apparently no plans to comply, despite previous litigation in *Herndon v Johnson*. Such conduct is intentional, illegal and reckless. Sheriff Higgins cannot meet his burden of showing Hall's requested accommodations are unreasonable in this case because he has not even complied with the decades old requirement that he self-evaluate and create a transition plan. The burden-shifting regime is consistent with the text of the relevant Title II regulation. The regulation provides that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). As a textual matter, § 35.130(b)(7)(i) places the burden on the government to demonstrate fundamental alteration but does not expressly do so with respect to the showing of reasonable modifications and their necessity. This omission is intentional. The regulation therefore imposes on plaintiffs the burden of initially proffering a reasonable accommodation and its necessity. *Accord Frederick L. v. Dep't of Pub. Welfare,* 364 F.3d 487, 492 n.4 (3d Cir. 2004). Plaintiff has done that, and the Sheriff cannot meet his burden on summary judgment because he simply has not shown he is in compliance with the ADA. In fact, he has admitted he has violated the ADA. **See DE SUF at Para 55.** Persons with disabilities are entitled

to their dignity. Lying in your own waste is not dignity. The Summary Judgment motion should be denied on the ADA claims.

WHEREFORE Plaintiff prays for an Order denying summary judgment and for all other proper relief.

Respectfully submitted,

SUTTER & GILLHAM, P.L.L.C.
Attorneys at Law
P.O. Box 2012
Benton, AR 72018
501/315-1910 Office
501/315-1916 Facsimile
Attorneys for the Plaintiff


Luther Oneal Sutter, Esq., ARBN 95-031
luther.sutterlaw@gmail.com


# CERTIFICATE OF SERVICE

I, hereby certify that a true and correct copy of the foregoing has been served upon counsel for the Defendants via AOC/ECF on this _1st__ day of June, 2022:

DAVID M. FUQUA (Ark. Bar No. 80048)
ANNIE DEPPER (Ark. Bar No. 2009267)
CHRIS STEVENS (Ark. Bar No. 2012289)
FUQUA CAMPBELL, P.A.
Attorneys at Law
3700 Cantrell Road, Suite 205
Little Rock, Arkansas 72202
Telephone: (501) 374-0200
dfuqua@fc-lawyers.com
adepper@fc-lawyers.com
cstevens@fc-lawyers.com
Attorneys for Defendant Higgins


/s/ *Luther Oneal Sutter*
Luther Oneal Sutter, ARBN 95031