IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CARLOS HALL, SR.**                                                                                       PLAINTIFF

v.                                            CASE NO. 4:21-CV-00106-BSM

**ERIC S. HIGGINS**                                                                                       DEFENDANT

## ORDER

Eric Higgins's motion for summary judgment [Doc. No. 18] is granted, and Carlos Hall's lawsuit is dismissed with prejudice. Hall's motion to strike [Doc. No. 32] is denied as moot.

## I. BACKGROUND

Carlos Hall, Sr. is a paraplegic and confined to a wheelchair. Pl.'s Resp. Def.'s Facts ¶¶ 8, 47, Doc. No. 27. He suffers from bladder and bowel incontinence, and uses a catheter and diapers. *Id.* ¶ 136. Hall was arrested on April 11, 2019, and booked into the Pulaski County Regional Detention Facility ("County Jail"). *Id.* ¶ 1. He was evaluated by Turn Key, who contracts with the Pulaski County Sheriff's Office to provide medical services to its inmates. *Id.* ¶¶ 40, 45. Hall reported no injuries during intake and the Turn Key employee performing the intake noted that Hall required a wheelchair and a catheter, and recommended he be placed in lower-level housing and in a lower bunk. *Id.* ¶¶ 46-47, 53. The County Jail placed Hall on medical administrative segregation because he was in a wheelchair. *Id.* ¶ 55.

Shortly after intake, Hall began complaining of catheter leakage, breathing difficulties, and chest pain. *Id.* ¶¶ 56–57. Turn Key providers evaluated Hall and cleared

him to remain at the facility. *Id*. Three days later, Hall requested to be transferred to a different unit where he could more easily shower. *Id.* ¶ 60. The next day, Turn Key referred Hall to the University of Arkansas for Medical Sciences ("UAMS") for evaluation of his catheter. *Id.* ¶¶ 61–64. Hall remained at UAMS for three days and was diagnosed with catheter cystitis. *Id.* ¶¶ 73, 75. Hall then returned to the County Jail and was transferred to a different unit within the facility, as he had requested prior to his hospitalization. *Id.* ¶ 78.

Between April 18 and May 4, 2019, Hall submitted numerous sick call requests and was repeatedly assessed by Turn Key. *See* Turn Key Records, Doc. No. 22. On May 4, Hall complained that he was experiencing chest pain and Turn Key again referred him to UAMS. Pl.'s Resp. Def.'s Facts ¶ 103. UAMS discharged Hall the next day and he returned to the County Jail. *Id.* ¶ 106. From May 5 to 20, Hall complained of various physical and mental issues and was evaluated by Turn Key numerous times. *See* Turn Key Records. He also submitted multiple grievances in which he cited problems showering, bowel incontinence, and pressure sores. *Id.* ¶ 123. The County Jail provided Hall a taller shower chair to make transfer from his wheelchair easier. Hall Dep. Vol. 2 at 72:2–73:6, Doc. No. 22.

Hall was released from the County Jail on May 20. Pl.'s Resp. Def.'s Facts ¶ 118. He is suing Pulaski County Sheriff Eric Higgins, alleging deliberate indifference to his medical needs, unconsitiutional conditions of confinement, and disability discrimination under the Arkansas Civil Rights Act ("ACRA") and the Americans with Disabilities Act ("ADA"). Am. Compl., Doc. No. 4. Higgins moves for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

A. <u>Official Capacity Claims</u>

Hall does not expressly state that he is suing Higgins in his individual capacity, so all of his claims are interpreted as official capacity claims, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995), which are essentially claims against Pulaski County, *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018). His claims against the county may be sustained if he was damaged as a result of an unconstitutional custom, policy or practice. *Luckert v. Dodge Cty.*, 684 F.3d 808, 820 (8th Cir. 2012) (citations omitted).

*1. Deliberate Indifference to Medical Needs*

Summary judgment is granted on Hall's deliberate indifference claims. To prove deliberate indifference to a medical need, Hall must show that (1) he suffered from objectively serious medical needs, and (2) the County Jail actually knew of, but deliberately disregarded, those needs. *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016). Hall alleges that the County Jail was deliberately indifferent because it: (1) ignored his bowel incontinence and left him to lie in his own waste for hours; (2) caused him to develop pressure sores when it failed to give him an appropriate wheelchair, regularly turn his body, or conduct daily skin integrity checks; and (3) failed to provide proper care for his urinary incontinence and catheter. *Id*. ¶¶ 5-6, 9–11.

Summary judgment is granted because there is no genuine dispute of material fact about whether the County Jail actually knew of, or deliberately disregarded, any of Hall's serious medical needs. This is true because the record does not support Hall's claim that the County Jail knew that he was lying in his own waste or suffering from pressure sores. Turn Key saw Hall no fewer than eighteen times during his 39-day detention at the County Jail (notwithstanding the fact that Hall spent at least four days at UAMS). The documentation of the medical attention given to Hall by the County Jail is considerable, and yet nothing indicates he ever complained of lying in his own waste. *See* Turn Key Records. Moreover, nothing supports Hall's claim that he was left to lie in his own waste. *See Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (unsupported self-serving allegations do not

create genuine issue of material fact). Nothing in either Turn Key's or UAMS's records suggest that Hall suffered from pressure sores during his detention either. UAMS diagnosed Hall with pressure sores more than two months after he was released from the County Jail. *See* UAMS Records at 64 (noting "decubitus to sacrum" on August 7, 2019), Doc. No. 21. Moreover, the record does not support Hall's claim that the County Jail was deliberately indifferent to his urinary incontinence and catheter-related needs. Hall cannot show deliberate indifference because each time he complained of catheter leakage, Turn Key providers promptly assessed his condition. *See* Pl.'s Resp. Def.'s Facts ¶¶ 56, 61, 63, 90, 117. When a provider noted a potential infection associated with his catheter, the County Jail sent Hall to UAMS that same day. *Id*. ¶ 64.

Even if Hall could show deliberate indifference, he has failed to show that the indifference he faced was caused by a policy, custom, or practice of the jail. The County Jail has policies related to intake medical screening, healthcare services to inmates, special treatment considerations for disabled inmates, and medical training for its staff. *See* Branch Directives D10-0046, D10-0001, D10-0033, and D10-0042, Doc. No. 21. Hall does not point to any of these policies as the cause of his harm. He vaguely suggests that the County Jail's policies may not comply with ADA regulations and create a gap in care for someone with his conditions, but these assertions are not enough to establish liability. *See Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). Further, Hall has presented no evidence that any harm he suffered was due to a widespread County Jail practice or custom.

5

*See Corwin v. City of Indep., Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (requiring a plaintiff to demonstrate "the existence of a continuing, widespread, persistent pattern of unconstitutional conduct.").

*2. Conditions of Confinement*

Summary judgment is granted on Hall's claims that his conditions of confinement were unconstitutional. An unconstitutional conditions of confinement claim is analyzed under the deliberate indifference standard. *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005). Hall must therefore show that (1) the conditions of confinement posed a substantial risk of serious harm; and (2) that prison officials knew of but disregarded, or were deliberately indifferent to, his health and safety. *Id*. Hall must also show that any constitutional violation related to the conditions of his confinement was the result of an unconstitutional custom, policy, or practice of Pulaski County. *Luckert*, 684 F.3d at 820. In support of this claim, Hall asserts that his conditions of confinement were unconsitiutional because the County Jail denied him handicap-accessible showers and toilets, and did not assist him with personal hygiene. *See* Am. Compl. ¶ 11; Pl.'s Br. Supp. Resp. Mot. Summ. J. at 8–10, Doc. No. 26.

Summary judgment is granted on Hall's claims that the County Jail failed to provide him handicap-accessible toilets and failed to assist him with hygiene because these claims are not supported by the record. Although Pulaski County concedes that Hall did not always have access to handicap-accessible toilets, Def.'s Br. Supp. Mot. Summ. J. at 24, Doc. No.

19, it points out that it was unaware Hall needed an accessible toilet because he used a catheter and wore diapers. *Id*. Further, Hall never complained about toilet access during his detention. *See Crow*, 403 F.3d at 602 (jail must know of, but disregard, a health or safety need). Hall's claim that the jail would not assist him with hygiene fails for similar reasons. Nothing in the record indicates that Hall asked for, but was denied, help with his hygiene.

There is a dispute of material fact as to whether Hall had access to handicap-accessible showers throughout his detention. Although the county submits an affidavit sating that Hall had access, *see* Arivette Aff. ¶¶ 5–7, 9, 11, Doc. No. 22, this is contradicted by Hall's testimony and the grievance he filed, Hall Dep. Vol. 2 at 72:11–73:6.

Notwithstanding any factual disagreements, summary judgment is granted on Hall's conditions of confinement claims because nothing shows that the jail deprived Hall of any of these services as a result of an unconstitutional custom, policy, or practice. The County Jail has a policy to accommodate disabled inmates and provide accessible housing, Branch Directive D10-0040, Doc. No. 21. Hall does not contend that this policy is constitutionally defective, or point to another official policy as the cause of his harm. *See Corwin*, 829 F.3d at 700. He also does not show that his allegations stem from a widespread County Jail custom or practice of unconstitutional conduct. *See Id*. County liability cannot attach without such a showing, and therefore summary judgment is granted.

B.     <u>Disability Discrimination</u>

Hall further alleges that the County Jail discriminated against him on the basis of his

disability, in violation of the ACRA and Title II of the ADA. Disability claims under the ACRA and ADA are analyzed using the same standard. *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002). To show a Title II ADA violation, Hall must have been excluded from participation in or denied the benefits of the County Jail's services, programs, or activities, or be otherwise discriminated against by the County Jail because of his disability. *Rinehart v. Weitzell*, 964 F.3d 684 (8th Cir. 2020).

Hall asserts that the County Jail violated Title II by denying him access to medical care. As discussed above, however, the record reflects that Hall received extensive medical attention from Turn Key providers during his detention. No reasonable juror could find that he was denied access to care. To the extent Hall alleges that the care he received was merely improper, his claim cannot be brought under the ADA. *A.H. v. St. Louis, Cnty., Mo.*, 891 F.3d 721, 729 (8th Cir. 2018).

Hall also asserts that the County Jail violated Title II by not placing him in an accessible cell. While the specifics of this claim are somewhat murky, Hall suggests that the County Jail was required to place him in a cell with grab bars and provide him more meaningful access to the bathroom. He does not cite any authority for his contention that grab bars are required by the ADA, and the county has cited ADA design standards indicating that there is no such requirement for detention facilities. Def.'s Reply at 15–16 (citing 1991 and 2010 ADA Standards for Accessible Design), Doc. No. 31. Further, the County Jail's failure to provide Hall an accessible toilet for part of his detention did not

violate the ADA because Hall's need for this accommodation was not apparent. *See Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) ("public entities are not required to guess at what accommodations they should provide"). Summary judgment is therefore granted on Hall's disability claims because the record does not create a genuine material dispute of fact concerning the County Jail's compliance with the ADA.

C. Motion to Strike

Hall moves to strike the exhibits attached to Higgins's reply in support of the motion for summary judgment. These exhibits include a second affidavit from Matthew Arivette and photographs of the County Jail shower facilities. New evidence presented in reply to a motion for summary judgment should not be considered without giving the nonmovant an opportunity to respond. *Painters Dist. Council No 58 v. RDB Universal Servs., LLC*, Case No. 4:14CV01812 ERW, 2016 WL 1366600, at *6 (E.D. Mo. Apr. 6, 2016). My grant of Higgins's motion for summary judgment, however, does not rely on the exhibits Hall wishes to strike. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164–65 (10th Cir. 1998) (finding no abuse of discretion when district court precluded surreply). Even without these exhibits, Hall fails to demonstrate a genuine factual dispute requiring a trial.

IV. CONCLUSION

For the foregoing reasons, Higgins's motion for summary judgment [Doc. No. 18] is granted, and Hall's motion to strike [Doc. No. 32] is denied as moot.

IT IS SO ORDERED this 1st day of July, 2022.

_____
UNITED STATES DISTRICT JUDGE